# THE
# NEW YORK SUPPLEMENT
## VOLUME 149

(86 Misc. Rep. 512)

**ORANGE COUNTY TRACTION CO. v. CITY OF NEWBURGH et al.**

(Supreme Court, Special Term, Orange County. August 24, 1914.)

1. STREET RAILROADS (§ 38*)—CONSTRUCTION—PAVEMENT BETWEEN TRACKS.

Under Railroad Law (Laws 1890, c. 565) § 98, providing that every street railroad company shall keep in permanent repair that portion of the street between its tracks, the company is only required to keep in repair so much of the space between its tracks as they are ordinarily laid down in the construction of double track trolley railroads.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

2. STREET RAILROADS (§ 37*)—CONSTRUCTION—PAVEMENT BETWEEN TRACKS.

Where the franchise of a street railroad company provided for the erection of a single line of center trolley poles, and under such system the cars could not be conveniently and safely operated with less than 7 feet 10 inches between the tracks, the company, being bound to pave between the tracks and having so constructed its line, was required to pay the cost of paving the whole space, though it was greater than would have been necessary had the system been otherwise constructed.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 103, 105, 126; Dec. Dig. § 37.*]

3. MUNICIPAL CORPORATIONS (§ 522*)—STREET IMPROVEMENTS—ASSESSMENTS—COLLECTION.

Where a city charter provided that the portion of the expense of improving a street to be paid by any street railroad after the same had been assessed should be repaid to the city in annual installments, including the proper proportion of interest due on bonds issued therefor in each and every year as might be fixed by the city council, the city was authorized to assess the whole cost for the pavement of the railroad's part of the street, but was only authorized to require payment in annual installments as provided.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1229; Dec. Dig. § 522.*]

4. MUNICIPAL CORPORATIONS (§ 475*)—STREET IMPROVEMENTS—PAVEMENT—ASSESSMENTS—VALIDITY.

Where a street railroad company was properly assessed for its portion of the cost of improving a street, but the assessment was objectionable in that it required payment of the whole assessment at once instead of in installments, as provided by the city charter, the defect appearing on the

---

face of the assessment did not render the assessment void so as to entitle the railroad company to maintain the suit to set it aside.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1125, 1126; Dec. Dig. § 475.*]

Suit by the Orange County Traction Company against the City of Newburgh and James Miller, as Collector of the City of Newburgh. Judgment for defendant dismissing the complaint on the merits.

William F. Cassedy, of Newburgh, N. Y. (Henry Bacon, of Goshen, N. Y., of counsel), for plaintiff.

Graham Witschief, of Newburgh, N. Y., for defendants.

TOMPKINS, J. The plaintiff, a railroad corporation, operating a trolley line in the city of Newburgh, brings this action against that city and its collector of taxes to restrain the collection of an assessment for paving a part of Broadway in said city, in which the plaintiff operates a part of its trolley system, and to have said assessment and the warrant for its collection declared invalid, and canceled.

The original franchise given by the plaintiff's predecessor in 1884 provided for the construction and operation of a single track street surface railway, operated by horse power, with switches, sidings, turnouts, etc., and contained the following provision:

"5th. Said street railway company shall whenever, and as required, and under the supervision of the common council of the city of Newburgh, keep in permanent repair the portion of every street between its tracks, the rails of its tracks, and a space two feet in width outside and adjoining the outside rails of its tracks, so long as it shall continue to use such tracks so constructed as aforesaid, at its own cost, and expense, and said company shall enter into a good and sufficient agreement with the city of Newburgh so to do."

The provision with respect to the space between the tracks applied where there were sidings, switches, etc. In 1894 a further and supplemental franchise was granted to the Newburgh Electric Railway Company, successor of the original company, and plaintiff's predecessor, granting to it permission to change its motive power from horse to the overhead trolley system of electrical power, and which franchise contained the following provision:

"The foregoing consent is upon the express condition that the provision of article 4, chapter 565 of the Laws of 1890, and the laws amendatory thereof, and supplemental and pertinent thereto, shall be complied with, and it shall be filed in the office of the clerk of Orange county."

Article 4 of chapter 565 of the Laws of 1890, which is the general railroad law, contains the following provision:

"Section 98. Every such corporation so long as it shall continue to use any of its tracks in any street, avenue, or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue, or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks," etc.

This supplemental franchise also contained a provision that upon Broadway, the trolley railroad should consist of two tracks "with center poles," together with suitable switches, sidings, etc. Under and

pursuant to the terms of this supplemental franchise, the plaintiff's predecessor, under the direction and supervision of the city authorities, located its double tracks in approximately the center of Broadway, with a space between said tracks of about 7 feet and 10 inches, through the center of which space a single line of trolley poles was erected, and has ever since been maintained, for carrying the wires that furnished electricity for the operation of said trolley railroad. In January, 1912, the common council adopted a resolution for a hearing on a proposition for the improvement of said Broadway, and thereafter proceedings were had under the city charter, which resulted in a determination by said city council to improve said Broadway, by paving its full width, and thereupon, by resolution duly adopted, and communicated to the plaintiff, ordered the plaintiff to pave that portion of Broadway lying between its tracks and two feet outside of the same, with a kind and quality of pavement that it appears from the resolution had been previously agreed upon between Mr. Odell, the president of the plaintiff, and the street committee of the city council, and within a few days thereafter, the plaintiff, by its president, in writing, acknowledged the receipt of the notice requiring the paving work to be done, and requested that the city should do the work under the provisions of the charter, assessing the cost thereof on the Orange County Traction Company, and thereafter the paving work was done by the city authorities, and the cost of that part of the work between the tracks of the plaintiff's railroad, as well as between the rails, and for two feet outside thereof, was assessed against the plaintiff, in accordance with the plaintiff's request just referred to, and it is that assessment which the plaintiff now seeks to get rid of by this action.

Two questions are presented by the pleadings and the briefs: First, had the city a right to assess the plaintiff for the paving of the entire space of 7 feet and 10 inches between the trolley tracks? Second, had the city council power to make the assessment payable in one amount, and to issue a warrant to the collector, directing him to collect the entire assessment immediately? These two questions we will consider in the order in which they are here stated.

[1] The plaintiff's claim is that the usual and ordinary space or width between the tracks of a double-track trolley railroad is 4 feet and 6 inches, and that, having been required by the city authorities to lay its tracks 7 feet and 10 inches apart, it should not be required to pay for paving the whole width between the tracks, but only for such width as is ordinary and usual between the tracks of a double-track trolley system, and contends that the provision of the Railroad Law above quoted, requiring the pavement to be maintained between "the tracks," is to be construed as meaning between tracks as they are ordinarily laid down in a double-track trolley system, and that is my interpretation of this provision of the Railroad Law; and, in the absence of any express agreement or franchise provision to the contrary, I would hold that where the city authorities locate and require the tracks of a street surface railway system to be laid farther apart than is usual and ordinary, and, in the absence of an express agreement or franchise provision to the contrary, that such railroad company would

only be required to pay for such width or space of pavement between its tracks as is usual and ordinary between the tracks of a double-track street surface railway line.

[2] The decision of this case, however, does not depend upon the railroad law alone, but rather upon the terms and conditions of the plaintiff's franchise. That expressly provides that a single line of center trolley poles shall be erected and maintained, and it is agreed that with that method of construction, the tracks were necessarily placed where they are, with a space between them of about 7 feet and 10 inches. It was testified by Mr. Odell, the plaintiff's president, that the cars of the company could not be conveniently and safely operated were the tracks closer together, and the center line of poles provided for by the franchise required that the tracks be placed on either side of the line of poles, in approximately the center of the street, and in the franchise which contained this provision in reference to the use of center poles is the following provision: "The foregoing consent is upon the express condition that the provision of article 4, chapter 565 of the Laws of 1890, and the laws amendatory thereof and supplemental and pertinent thereto, shall be complied with," and that statute requires that the company permanently maintain the pavement between "its tracks," so that, in my opinion, the effect of the franchise and its acceptance by the plaintiff, and the construction and operation of the railroad under its terms, constituted an express agreement on the part of the plaintiff to pave the entire width or space of 7 feet and 10 inches between its tracks. If the plaintiff's liability depended alone upon the provisions of section 98 of article 4 of the Railroad Law, it might well be argued that the plaintiff should only pay for such width of pavement as is usually and ordinarily maintained between the tracks of a double-track trolley system, but the plaintiff's obligation in this respect seems to me to be fixed by the terms of the franchise granted to and accepted by it, because the tracks are concededly where they must be, in order to safely operate a trolley railway from a line of center poles, for which the franchise provided.

So that my conclusion respecting the first question is that, the plaintiff and its predecessors having accepted a franchise providing in effect that the tracks shall be laid in the center of Broadway, with a line of center poles, and having constructed and operated its road in accordance therewith, and it being conceded that the tracks are as close together as they may properly and safely be for that manner of construction, and the franchise having been granted by the city upon plaintiff's agreement to keep the pavement between its tracks in permanent repair, and the plaintiff having been notified to do the paving work for which this assessment was made, and having thereupon requested the city to have it done along with the paving of the rest of the street, and the city having had the work done in accordance with that request, at a price that is not questioned, the plaintiff is liable for the cost of all the paving between its tracks, as well as between the rails of its tracks, and two feet outside of the rails.

The fact that some of the space between the tracks is used by the electric light company for the maintenance of a line of poles seems

to be immaterial. They were there when the plaintiff's franchise was granted and when the plaintiff made its agreement in respect to the pavement, and the question is not how much of the street is occupied and used by the plaintiff, but rather how much did the plaintiff agree to keep in repair.

[3] As to the second question, I think the city council had authority to make and confirm the assessment, but was without legal right to direct the collection of the full amount immediately, inasmuch as the cost of the entire work had been provided for, by an issue of bonds covering a period of 25 years, and the city charter provides that:

"After the same has been assessed upon such street surface railroad or property, shall be repaid to the city in such annual installments, including the proper proportion of interest due or to become due upon the bonds issued as aforesaid in each and every year, as may be fixed by the city council."

This provision, it seems to me, required the city council to provide for the collection of the assessment in installments, and not by one payment. This act of the common council, however, in directing the collector of taxes to make the collection immediately and in one payment, does not affect the validity of the assessment, nor give ground for the maintenance of this action, for the reason that the error or defect in the warrant is apparent upon its face, and upon the face of the proceedings of the common council, and in such a case, where there has been no sale of the assessed property, an action to cancel the assessment and remove the cloud from the title of the property assessed cannot be maintained.

The making of the assessment, and the issuing of the warrant directing the collection of the assessment, in annual installments, are two separate and distinct acts. The provision of the city charter is:

"The portion of the expense of such improvement to be paid by any street surface railroad, * * * after the same has been assessed upon such street surface railroad or property, shall be repaid by the city in such annual installments, including the proper proportion of interest due upon the bonds issued as aforesaid, in each and every year, as may be fixed by the city council."

[4] My conclusion upon this branch of the case is that the cost of the improvement, which the railroad company is liable to pay, may be assessed in one amount, and that such assessment would not be invalidated by the fact that the warrant issued to the collector of taxes improperly directed the collection of that assessment forthwith and in one payment, and that the warrant in such a case would be irregular and defective upon its face, and that the proceedings of the common council directing the collection of the assessment in that manner would, upon their face, show the illegality and error, and would not therefore afford ground for such an action as this, which can only be maintained where the defect is dehors the record.

I think that the common council, after assessing the proper cost of the improvement against the railroad company, should have adopted an additional resolution fixing the number of yearly installments to be paid by the plaintiff, and that the warrant to the collector should have been in accordance therewith, but I am convinced that the failure

of the common council to so do does not invalidate the assessment, for the reason already stated.

Judgment for the defendant dismissing the complaint upon the merits, with costs.